**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Andrei Armas, Esq. (SBN
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

[Other Attorneys on Signature Page]

*Attorneys for Plaintiffs*
Matthew Gates and Carlos Solis

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Matthew Gates and Carlos Solis, Individually And On Behalf Of All Others Similarly Situated,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**NBTY, Inc. and United States Nutrition, Inc.,**<br><br>**Defendants.** | **Case No.:**   **'16 CV2090 AJB  WVG**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

//
//
//

*(left margin, vertical text)* KAZEROUNI LAW GROUP, APC · 245 FISCHER AVENUE, SUITE D1 · COSTA MESA, CA 92626

1    INTRODUCTION

2    1.    The average consumer spends a mere 13 seconds making an in-store
3    purchasing decision, or between 10 to 19 seconds for an online purchase.[1]   That
4    decision is heavily dependent on a product's packaging, and particularly the
5    package dimensions:   "Most of our studies show that 75 to 80 percent of
6    consumers don't even bother to look at any label information, no less the net
7    weight . . . . Faced with a large box and a smaller box, both with the same amount
8    of product inside . . . consumers are apt to choose the larger box because they think
9    it's a better value."[2]   This lawsuit charges defendants NBTY, Inc. ("NBTY") and
10   United States Nutrition, Inc., ("USN") (collectively referred to as "Defendants")
11   with intentionally packaging its protein products, including its (1) Body Fortress
12   products (i.e., Body Fortress - Super Advanced Whey Protein, Body Fortress -
13   Super Advanced 100% Protein Isolate, Body Fortress - Super Advanced Mass
14   Gainer, and Body Fortress Energy Protein) ("Body Fortress Products") and (2)
15   Pure Protein products (i.e., Pure Protein – 100% Whey Protein, Pure Protein -
16   Daily Fit Powder, Pure Protein - Natural Whey, Pure Protein – Plus, and Pure
17   Protein – Body Shaping Formula) ("Pure Protein Products") (collectively the Body
18   Fortress Products and Pure Protein Products are referred to as the "Products") in
19   large, opaque containers that contain more than 37% empty space.  Consumers, in
20   reliance on the size of the containers, paid a premium price for the Products, which
21   they would not have purchased had they known that the containers were
22   substantially empty.

23   _____

24   [1] http://www.nielsen.com/us/en/insights/news/2015/make-the-most-of-your-brands-20-second-windown.html (citing the Ehrenberg-Bass Institute of
25   Marketing Science's report "Shopping Takes Only Seconds…In-Store and Online").

26   [2] http://www.consumerreports.org/cro/magazinearchive/2010/january/shopping/product-packaging/overview/product-packaging-ov.htm (quoting Brian Wansink,
27   professor and director of the Cornell Food and Brand Lab, who studies shopping
28   behavior of consumers).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

2.     Matthew Gates and Carlos Solis (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, bring this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the unlawful and deceptive actions of Defendants, with respect to the packaging of its Products.  Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

3.     Defendants sell nutritional supplements on a nationwide basis, including under the Pure Protein and Body Fortress brands.  Defendants' products are offered for sale in retail stores, such as Costco, BJs, Kroger, Rite Aid, Target and Safeway.  Defendants' Products are also sold online, including on websites such as amazon.com.  On amazon.com, a 2-pound container of Pure Protein - Whey Protein sells for approximately $28.52.[3] Similarly, a 2-pound container of Body Fortress - Super Advanced Whey Protein sells for approximately $17.94.[4]

4.     According to naturesbounty.com, "Health-conscious people have trusted Nature's Bounty® products for decades. Our dedication to quality, consistency, and scientific research has resulted in vitamins and nutritional supplements of unrivaled excellence. By combining the latest breakthroughs in nutritional science with the finest ingredients, we're proud to provide you with supplements of unsurpassed quality and value."[5]

5.     Plaintiffs purchased Defendants' Products, and expected to receive full containers of product.  The Products are packaged in non-transparent containers, as

---

[3] http://www.amazon.com/Pure-Protein-Vanilla-Cream-Pound/dp/B003V5PUZQ.  Accessed on December 22, 2015.
[4] http://www.amazon.com/s/ref=nb_sb_ss_i_1_14?url=search-alias%3Dhpc&field-keywords=body+fortress+whey+protein&sprefix=body+fortress+whey+protein%2Chpc%2C192. Accessed on December 22, 2015.
[5] https://www.naturesbounty.com/about-us/. Accessed on December 22, 2015.

depicted below.  Plaintiffs were surprised and disappointed when they opened the Products to discover that the containers had more than 37% empty space, or slack-fill.  Had Plaintiffs known about the slack-fill, they would not have bought Defendants' Products.

6.     Defendants' conduct violates consumer protection and labeling laws.

### JURISDICTION AND VENUE

7.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(l)(B), in which a member of the putative class is a citizen of a different state than Defendants, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs.  *See* 28 U.S.C. § 1332(d)(2).

8.     The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

9.     The Court has personal jurisdiction over Defendants because their Products are advertised, marketed, distributed and sold through the State of California; Defendants engaged in the wrongdoing alleged in this Complaint throughout the United States, including in the State of California; Defendants are authorized to do business in the State of California; and Defendants have sufficient minimum contacts with the State of California, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendants are engaged in substantial activity with the State of California.

10.     Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred within this judicial district, Defendants have marketed and sold the Products at issue in this action in this judicial district, and it conducts business within this judicial district.  In addition, Plaintiff Gates resides in this judicial district.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

**CLASS ACTION COMPLAINT FOR DAMAGES**                                         4

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

**PARTIES**

11.    Plaintiff Matthew Gates ("Gates") is a citizen of the State of California and resides in San Diego, California.  Sometime in November 2015, Plaintiff Gates purchased a Pure Protein - 100% Whey Powder product and Body Fortress - Super Advanced Whey Protein on amazon.com.  Plaintiff Gates purchased the products in reliance on Defendants' packaging in containers made, formed or filled as to be misleading and containing non-functional slack-fill.  Had Plaintiff Gates known the truth about Defendants' misrepresentations, he would not have purchased the premium priced Products.

12.    Plaintiff Carlos Solis ("Solis") is a citizen of the State of New York and resides in West Haverstraw, New York.  Sometime in October 2015, Plaintiff Solis purchased Defendants' Pure Protein - Daily Fit Powder and Body Fortress Super Advanced Whey Protein from local shops in Stony Point, New York.[6] Plaintiff Solis purchased the products in reliance on Defendants' packaging in containers made, formed or filled as to be misleading and containing non-functional slack-fill.  Had Plaintiff Solis known the truth about Defendants' misrepresentations, he would not have purchased the premium priced Products.

13.    Defendants NBTY and USN are incorporated in the state of Delaware. NBTY is the parent company of USN, which manufactures and/or distributes the Body Fortress and Pure Protein brands.

**FACTUAL ALLEGATIONS**

**Federal and State Laws Prohibit Non-functional Slack Full**

14.    The Federal Food Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.*, governs the sale of foods, drugs and cosmetics in the United States.  The classification of a product as a food, drug, or cosmetic affects the regulations by

---

[6] Specifically, Solis purchased Defendants' Pure Protein - Daily Fit Powder from a local Walgreens and Body Fortress - Super Advanced Whey Protein from Pathmark, also a local store.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

which the manufacturer must abide.  In general, a product is characterized according to its intended use, which may be established, among other ways, by: (a) claims stated on the product's labeling, in advertising, on the Internet, or in other promotional materials; (b) consumer perception established through the product's reputation, for example by asking why the consumer is buying it and what the consumer expects it to do; or (c) the inclusion of ingredients well-known to have therapeutic use, for example fluoride in toothpaste.  The Products are characterized and understood by consumers to be a food.

15.    Under the FDCA, the term "false" has its usual meaning of untruthful, while the term "misleading" is a term of art.  Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading.  If any one representation in the labeling is misleading, the entire Product is misbranded.  No other statement in the labeling cures a misleading statement.  "Misleading" is judged in reference to "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951).  Under the FDCA, it is not necessary to prove that anyone was actually misled.

**A.    Misbranding of Foods**

16.    The Product labels contain numerous ingredients found in or derived from food, including whey protein, cocoa powder, and eggs.  Certain product labels also describe how to make drinks and milkshakes from the powders.

17.    According to mayoclinic.org, milk is made up of two types of proteins – casein and whey.  "Whey proteins contain higher levels of essential amino acids. They are used in ice cream, bread, soup, baby formula, and other food products."[7] According to webMD.com, whey protein is "the protein contained in whey, the

[7] http://www.mayoclinic.org/drugs-supplements/whey-protein/background/hrb-20060532.  Accessed on September 18, 2015.

1  watery portion of milk that separates from the curds when making cheese."[8]

2  18.    Under the Federal Food Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §

3  343(d), a food shall be deemed to be misbranded if "(a) . . . (1) its labeling is false

4  or misleading in any particular"; or "(d) If its container is so made, formed, or

5  filled as to be misleading."

6  19.    Pursuant to 21 C.F.R. §100.100, a food is misbranded if "its container is so

7  made, formed or filled as to be misleading."  In addition, "(a) A container that does

8  not allow the consumer to fully view its contents shall be considered to be filled as

9  to be misleading if it contains nonfunctional slack-fill.  Slack-fill is the difference

10 between the actual capacity of a container and the volume of product contained

11 therein.  Nonfunctional slack-fill is the empty space in a package that is filled to

12 less than its capacity for reasons other than:

13      (1) Protection of the contents of the package;

14      (2) The requirements of the machines used for enclosing the contents in such

15      package;

16      (3) Unavoidable product settling during shipping and handling;

17      (4) The need for the package to perform a specific function (e.g., where

18      packaging plays a role in the preparation or consumption of a food), where

19      such function is inherent to the nature of the food and is clearly

20      communicated to consumers;

21      (5) The fact that the product consists of a food packaged in a reusable

22      container where the container is part of the presentation of the food and has

23      value which is both significant in proportion to the value of the product and

24      independent of its function to hold the food, e.g., a gift product consisting of

25      a food or foods combined with a container that is intended for further use

26

27 [8] http://www.webmd.com/vitamins-supplements/ingredientmono-833-

28 whey%20protein.aspx?activeingredientid=833&activeingredientname=whey%20p
   rotein.  Accessed on September 18, 2015.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

1  after the food is consumed; or durable commemorative or promotional

2  packages; or

3  (6) Inability to increase level of fill or to further reduce the size of the

4  package . . . ."

5  20.    None of the above safe-harbor provisions applies to the Products.

6  Defendants intentionally incorporated non-functional slack-fill in its packaging of

7  the Products in order to mislead consumers, including Plaintiffs and Members of

8  the Class.  *Waldman v. New Chapter, Inc.,* 714 F. Supp. 2d 398, 405 (E.D.N.Y.

9  2010) ("Misleading consumers is not a valid reason to package a product with

10  slack-fill.  *See* 21 C.F.R. § 100.100(a)(1-6).").

11  21.    California and New York consumer protection and food labeling laws

12  impose requirements that mirror the federal law.  California Business &

13  Professions Code states, "[n]o container shall be made, formed, or filled as to be

14  misleading" and  "[a] container that does not allow the consumer to fully view its

15  contents shall be considered to be filled as to be misleading if it contains

16  nonfunctional slack fill."  *See* Cal. Bus. & Prof. Code § 12606 (incorporating the

17  safe harbor provisions of the CFR).  *See also* Cal. Health and Safety Code §

18  110690 ("Any food is misbranded if its container is so made, formed, or filled as to

19  be misleading."); NY AGM. Law § 201 ("Food shall be deemed to be misbranded .

20  . . . If its container is so made, formed, colored or filled as to be misleading.").

21  **Defendants' Products Contain Non Functional Slack-Fill**

22  22.    Defendants' Products are sold in non-transparent containers that contain

23  different net weights.  Each of the containers has significant slack-fill, as described

24  below.

25  23.    Defendants' Pure Protein -100% Whey Protein container depicted below is

26  roughly 8 inches tall.  Up to and not including the space where the interior of the

27  container narrows and above the indentation where the lid begins, approximately

28  37% of the interior of the container is comprised of empty space, or non-functional

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

slack fill.  *See* PHOTO A.

PHOTO A



24.    Defendants' Body Fortress - Super Advanced Whey Protein container, purchased by both Plaintiffs and depicted below, is roughly 8 inches tall.  Up to and not including the space where the interior of the container narrows and above the indentation where the lid begins, approximately 37% of the interior of the container is comprised of empty space, or non-functional slack fill.  *See* PHOTO B.

//

//

//

PHOTO B



25.    Judging from the sizes of the containers, a reasonable consumer would expect them to be substantially filled with product.  Consumers are misled into believing that they are purchasing substantially more Whey product than they receive.

26.    There is no functional reason for including more than 37% slack-fill in the Products.

27.    On information and belief, consumers have relied upon, and are continuing to rely upon, the size of the Products' containers as the basis for making purchasing decisions.  Consumers believe that the Products are substantially full because they cannot see the actual contents within the non-transparent container.

1  *See Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 404 (E.D.N.Y. 2010)

2  (finding that a half-filled supplement container could constitute a "misleading

3  representation" that resulted in the unjust enrichment of the manufacturer even

4  though the weight of the product and the number of servings enclosed were clearly

5  listed on the outer packaging).

6  28.    On information and belief, Defendants are selling and will continue to sell

7  the Products using these blatantly deceptive and misleading slack-filled containers.

8  29.    Defendants' packaging and advertising of the Products violates various state

9  laws against misbranding, which contain requirements that mirror the FDCA, as

10  described herein.

11  **Plaintiffs Relied on Defendants' Misleading and Deceptive Conduct and Were**

12  **Injured as a Result**

13  32.    The types of misrepresentations made, as described herein, were considered

14  by Plaintiffs and Class Members (as would be considered by a reasonable

15  consumer) when deciding to purchase the Products.    Reasonable consumers,

16  including Plaintiffs and Class Members, attached importance to whether

17  Defendants' Products were misbranded, *i.e.*, not legally salable, or capable of legal

18  possession, and/or contain non-functional slack-fill.

19  33.    Plaintiffs and the Class Members did not know, and had no reason to know,

20  that the Products contained non-functional slack-fill.

21  34.    Defendants' Product packaging was a material factor in Plaintiffs' and the

22  Class Members' decisions to purchase the Products.    Based on Defendants'

23  Product packaging, Plaintiffs and the Class Members believed that they were

24  getting more Product than was actually being sold.    Had Plaintiffs known

25  Defendants' packaging was slack-filled, they would not have bought the slack-

26  filled Products.

27

28

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

35.     Plaintiffs and the Class Members paid the full price of the Products and received less Product than they expected due to the non-functional slack-fill in the Products.

36.     There is no practical reason for the non-functional slack-fill used to package the Products other than to mislead consumers as to the actual volume of the Products being purchased by consumers.

37.     As a result of Defendants' misrepresentations, Plaintiffs and thousands of others throughout the United States purchased the Products.  Plaintiffs and the Class (defined below) have been damaged by Defendants' deceptive and unfair conduct.

## CLASS ACTION ALLEGATIONS

38.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following National class and subclasses (collectively, the "Class" or "Classes"), defined as:

National Class:   All persons in the United States who made retail purchases of Defendants' Products in containers made, formed or filled as to be misleading and with non-functional slack-fill, during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

California Subclass:  All California residents who made retail purchases of Defendants' Products in containers made, formed or filled as to be misleading and with non-functional slack-fill, during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

New York Subclass:  All New York residents who made retail purchases of Defendants' Products in containers made, formed or filled as to be misleading and with non-functional slack-fill, during the applicable

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

1  limitations period, and/or such subclasses as the Court may deem
2  appropriate.

3  39.   The proposed Classes exclude current and former officers and directors of
4  Defendants, Members of the immediate families of the officers and directors of
5  Defendants, Defendants' legal representatives, heirs, successors, assigns, and any
6  entity in which it has or has had a controlling interest, and the judicial officer to
7  whom this lawsuit is assigned.

8  40.   Plaintiffs reserve the right to revise the Class definitions based on facts
9  learned in the course of litigating this matter.

10  41.   <u>Numerosity</u>: This action has been brought and may properly be maintained
11  as a class action against Defendants under Rules 23(b)(1)(B) and 23(b)(3) of the
12  Federal Rules of Civil Procedure.  While the exact number and identities of other
13  Class Members are unknown to Plaintiffs at this time, Plaintiffs are informed and
14  believe that there are hundreds of thousands of Members in the Class.  Based on
15  sales of the Products, it is estimated that the Class is composed of more than
16  10,000 persons.   Furthermore, even if subclasses need to be created for these
17  consumers, it is estimated that each subclass would have thousands of Members.
18  The Members of the Class are so numerous that joinder of all Members is
19  impracticable and the disposition of their claims in a class action rather than in
20  individual actions will benefit the parties and the courts.

21  42.   <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the Members of the
22  Class as all Members of the Class are similarly affected by Defendants' wrongful
23  conduct, as detailed herein.

24  43.   <u>Adequacy</u>:  Plaintiffs will fairly and adequately protect the interests of the
25  Members of the Class in that they have no interests antagonistic to those of the
26  other Members of the Class.  Plaintiffs have retained experienced and competent
27  counsel.

28

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

44.   <u>Superiority</u>:  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.   Since the damages sustained by individual Class Members may be relatively small, the expense and burden of individual litigation makes it impracticable for the Members of the Class to individually seek redress for the wrongful conduct alleged herein.   Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein.   There will be no difficulty in the management of this action as a class action.   If Class treatment of these claims were not available, Defendants would likely unfairly receive thousands of dollars or more in improper revenue.

45.   <u>Common Questions Predominate</u>:  Common questions of law and fact exist as to all Members of the Class and predominate over any questions solely affecting individual Members of the Class.   Among the common questions of law and fact applicable to the Class are:

i.   Whether Defendants labeled, packaged, marketed, advertised and/or sold Products to Plaintiffs, and those similarly situated, using false, misleading and/or deceptive packaging and labeling;

ii.   Whether Defendants' actions constitute violations of 21 U.S.C. 100.100, *et. seq*.;

iii.   Whether Defendants' actions constitute violations of state consumer protection laws;

iv.   Whether Defendants omitted and/or misrepresented material facts in connection with the labeling, packaging, marketing, advertising and/or sale of its Products;

v.   Whether Defendants' labeling, packaging, marketing, advertising and/or selling of Products constituted an unfair, unlawful or fraudulent practice;

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

vi.    Whether Defendants' packaging of the Products constituted nonfunctional slack-fill;

vii.   Whether, and to what extent, injunctive relief should be imposed on Defendants to prevent such conduct in the future;

viii.  Whether the Members of the Class have sustained damages as a result of Defendants' wrongful conduct;

ix.    The appropriate measure of damages and/or other relief; and

x.     Whether Defendants should be enjoined from continuing its unlawful practices.

46.    The class is readily definable, and prosecution of this action as a Class action will reduce the possibility of repetitious litigation.  Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a Class Action.

47.    The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendants has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

48.    The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual Members; and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

49.    The prosecution of separate actions by Members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants.  Additionally, individual actions may be dispositive of the interest of all Members of the Class, although certain Class Members are not parties to such actions.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

50.   Defendants' conduct is generally applicable to the Class as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION
### COUNT I
**VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT, Cal. Civ. Code § 1750, *et seq.***

51.   Plaintiffs re-allege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

52.   Plaintiffs bring this claim individually and on behalf of the Class for Defendants' violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code 1761(d).

53.   Plaintiffs and the Class Members are consumers who purchased the Products for personal, family or household purposes.  Plaintiffs and the Class Members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code 1761(d). Plaintiffs and the Class Members are not sophisticated experts with independent knowledge of corporate branding, labeling and packaging practices.

54.   The Products that Plaintiffs and other Class Members purchased from Defendants were "goods" within the meaning of Cal. Civ. Code 1761(a).

55.   Defendants' actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

56.   Defendants violated federal and California law because the Products are packaged in containers made, formed or filled as to be misleading and which contain non-functional slack-fill, and because they are intentionally packaged to prevent the consumer from being able to fully see their contents.

57.   California's Consumers Legal Remedies Act, Cal. Civ. Code 1770(a)(5), prohibits "Misrepresenting that goods or services have sponsorship, approval,

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

1   characteristics, ingredients, uses, benefits, or quantities which they do not have or

2   that a person has a sponsorship, approval, status, affiliation, or connection which

3   he or she does not have."  By engaging in the conduct set forth herein, Defendants

4   violated and continues to violate Section 1770(a)(5) of the CLRA, because

5   Defendants' conduct constitutes unfair methods of competition and unfair or

6   fraudulent acts or practices, in that it misrepresents that the Products have

7   quantities they do not have.

8   58.    Cal. Civ. Code 1770(a)(9) further prohibits "[a]dvertising goods or services

9   with intent not to sell them as advertised."  By engaging in the conduct set forth

10   herein, Defendants violated and continues to violate Section 1770(a)(9), because

11   Defendants' conduct constitutes unfair methods of competition and unfair or

12   fraudulent acts or practices, in that it advertises goods as containing more product

13   than they in fact contain.

14   59.    Plaintiffs and the Class Members are not sophisticated experts about

15   corporate branding, labeling and packaging practices.  Plaintiffs and the Class

16   acted reasonably when they purchased the Products based on their belief that

17   Defendants' representations were true and lawful.

18   60.    Plaintiffs and the Class suffered injuries caused by Defendants because (a)

19   they would not have purchased the Products on the same terms absent Defendants'

20   illegal and misleading conduct as set forth herein; (b) they paid a price premium

21   for the Products due to Defendants' misrepresentations and deceptive packaging in

22   containers made, formed or filled as to be misleading and containing non-

23   functional slack-fill; and (c) the Products did not have the quantities as promised.

24   61.    On or about December 21, 2015, prior to filing this action, Plaintiff Gates

25   sent a CLRA notice letter to Defendants, which complies with California Civil

26   Code 1782(a).  Plaintiff Gates sent Defendants, individually and on behalf of the

27   proposed Class, a letter via Certified Mail, advising Defendants that it is in

28

---

CLASS ACTION COMPLAINT FOR DAMAGES                                              17

violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.

62.     Wherefore, Plaintiffs seek injunctive relief for these violations of the CLRA.

## COUNT II
### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW,
### California Business & Professions Code § 17200, *et seq.*

63.     Plaintiffs re-llege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

64.     Plaintiffs bring this claim individually and on behalf of the Members of the Class for Defendants' violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.

65.     The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising…"

66.     Defendants violated federal and California law because the Products are packaged in containers made, formed or filled as to be misleading and that contain non-functional slack-fill and because they are intentionally packaged to prevent the consumer from being able to fully see their contents.

### *A. "Unlawful" Prong*

67.     Defendants' business practices, described herein, violated the "unlawful" prong of the UCL by violating Section 352 of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. 301, the CLRA, Cal. Bus. & Prof. Code § 12606, California Health & Safety Code § 110690, and other applicable law as described herein.

68.     Defendants violated section 12606 of the Business and Professions Code, in that Defendants packaged their Products in non-conforming type containers.  Said non-conforming packages contained extra space by volume in the interior of the container.  The extra space provided no benefit to the contents of the packaging

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

1 │ and misled consumers. In addition, Defendants packaged their Products in
2 │ containers made, formed, or filled as to be misleading to a potential customer as to
3 │ the actual size and filling of the package with Defendants' Products.

**B. *"Unfair" Prong***

5 │ 69. Defendants' business practices, described herein, violated the "unfair" prong
6 │ of the UCL in that its conduct is substantially injurious to consumers, offends
7 │ public policy, and is immoral, unethical, oppressive, and unscrupulous, as the
8 │ gravity of the conduct outweighs any alleged benefits. Defendants' advertising is
9 │ of no benefit to consumers.

**C. *"Fraudulent" Prong***

11 │ 70. Defendants violated the "fraudulent" prong of the UCL by misleading
12 │ Plaintiffs and the Class to believe that the Products contained more content than
13 │ they actually contain and that such packaging and labeling practices were lawful,
14 │ true and not intended to deceive or mislead consumers.

15 │ 71. Plaintiffs and the Class Members are not sophisticated experts about the
16 │ corporate branding, labeling, and packaging practices of the Products. Plaintiffs
17 │ and the Class acted reasonably when they purchased the Products based on their
18 │ belief that Defendants' representations were true and lawful.

19 │ 72. Plaintiffs and the Class lost money or property as a result of Defendants'
20 │ UCL violations because (a) they would not have purchased the Products on the
21 │ same terms absent Defendants' illegal conduct as set forth herein, or if the true
22 │ facts were known concerning Defendants' representations; (b) they paid a price
23 │ premium for the Products due to Defendants' misrepresentations; and (c) the
24 │ Products did not have the quantities as represented.

25 │ 73. The conduct of Defendants as set forth above demonstrates the necessity for
26 │ granting injunctive relief restraining such and similar acts of unfair competition
27 │ pursuant to California Business and Professions Code. Unless enjoined and
28 │ restrained by order of the court, Defendants will retain the ability to, and may

*KAZEROUNI LAW GROUP, APC*
*245 FISCHER AVENUE, SUITE D1*
*COSTA MESA, CA 92626*

engage in, said acts of unfair competition, and misleading advertising.  As a result, Plaintiffs and the Class are entitled to injunctive and monetary relief.

## COUNT III
## VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW,
### California Business & Professions Code § 17500, *et seq.*

74.    Plaintiffs re-allege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

75.    Plaintiffs bring this claim individually and on behalf of the Members of the Class for Defendants' violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*

76.    Under the FAL, the State of California makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state . . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

77.    Defendants engaged in a scheme of offering misbranded Products for sale to Plaintiffs and the Class Members by way of packaging the Products in containers made, formed or filled as to be misleading and which contain non-functional slack-fill.  Such practice misrepresented the content and quantity of the misbranded Products.  Defendants' advertisements were made in California and come within the definition of advertising as contained in Bus. & Prof Code §§ 17500, *et seq.* in that the product packaging was intended as inducements to purchase Defendants' Products.  Defendants knew their conduct was unauthorized, inaccurate, and misleading.

78.    Defendants violated federal and California law because the Products are packaged in containers made, formed or filled as to be misleading and which

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

contain non-functional slack-fill and because they are intentionally packaged to prevent the consumer from being able to fully see their contents.

79.    Defendants violated 17500, *et seq.* by misleading Plaintiffs and the Class to believe that the Product packaging contains more whey product than it in fact contains, as described herein.

80.    Defendants knew or should have known, through the exercise of reasonable care that the Products were and continue to be misbranded, and that its representations about the quantities of the Products were untrue and misleading.

81.    Plaintiffs and the Class Members lost money or property as a result of Defendants' FAL violations because (a) they would not have purchased the Products on the same terms absent Defendants' illegal conduct as set forth herein, or if the true facts were known concerning Defendants' representations; (b) they paid a price premium for the Products due to Defendants' misrepresentations; and (c) the Products did not have the benefits, or quantities as promised, and as a result the class is entitled to monetary and injunctive relief.

## COUNT IV
## VIOLATION OF NEW YORK DECEPTIVE TRADE PRACTICES ACT
## NEW YORK GENERAL BUSINESS LAW § 349

82.    Plaintiffs re-allege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

83.    Plaintiffs bring this claim individually and on behalf of the Members of the Class for Defendants' violations of New York's Deceptive Acts or Practices Law, NY GBL § 349.

84.    NY GBL § 349 states that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are … unlawful."

85.    Any person who has been injured by reason of a violation of NY GBL § 349 may bring an action to enjoin such unlawful act or practice, an action to recover

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

actual damages or fifty dollars, whichever is greater, or both.  The court may, in its discretion, increase the award to an amount not to exceed three times the actual damage, up to one thousand dollars, if the conduct was willful or knowing.

86.    It is not necessary to prove justifiable reliance under NY GBL § 349.  *See Koch v. Acker, Merrall & Condit. Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) ("To the extent that the Appellate Division order imposed a reliance requirement on General Business law 349 . . . claims, it was error.  Justifiable reliance by the plaintiff is not an element of the statutory claim.") (internal citations omitted).

87.    Defendants engaged in deceptive acts and practices by offering misbranded Products for sale in trade or commerce to Plaintiffs and the Class Members by way of packaging the Products in containers made, formed or filled as to be misleading and which contain non-functional slack-fill.  Such practices were in violation of NY GBL § 349 and 21 C.F.R. 100.100.

88.    Defendants violated federal and New York law because the Products are packaged in containers made, formed or filled as to be misleading and which contain non-functional slack-fill and because they are intentionally packaged to prevent consumers from being able to fully see their contents.

89.    The foregoing deceptive acts and practices were directed at consumers.

90.    Plaintiffs and the Class Members lost money or property as a result of Defendants' violations of NY GBL § 349 because (a) they would not have purchased the Products on the same terms absent Defendants' illegal conduct as set forth herein, or if the true facts were known concerning Defendants' representations; (b) they paid a price premium for the Products due to Defendants' misrepresentations; and (c) the Products did not have the benefits, or quantities as promised, and as a result the class is entitled to monetary and injunctive relief.

//

//

## COUNT V
## NEGLIGENT MISREPRESENTATION

91.   Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein, and further allege as follows:

92.   Defendants, directly or through its agents and employees, made false representations, concealments and non-disclosures to Plaintiffs and Members of the Class.

93.   Defendants as the manufacturer, packager, labeler and initial seller of the Products purchased by Plaintiffs and Class Members had a duty to disclose the true quantity of the Products and to refrain from selling them in containers made, formed or filled as to be misleading and which contain non-functional slack-fill. Defendants had exclusive knowledge of material facts not known or reasonably accessible to Plaintiffs and Class Members; Defendants actively concealed material facts from Plaintiffs and Class Members and Defendants made partial representations that are misleading because some other material fact has not been disclosed.  Defendants' failure to disclose the information it had a duty to disclose constitutes material misrepresentations and materially misleading omissions which misled Plaintiffs and Class Members, who relied on Defendants in this regard to disclose all material facts accurately, truthfully and fully.

94.   Plaintiffs and Members of the Class reasonably relied on Defendants' representation that the Products contain more whey product than actually packaged.

95.   In making the representations of fact to Plaintiffs and Members of the Class described herein, Defendants have failed to fulfill its duties to disclose the material facts set forth above.  The direct and proximate cause of this failure to disclose was Defendants' negligence and carelessness.

96.   Defendants, in making the misrepresentations and omissions, and in engaging in the acts alleged above, knew or reasonably should have known that the

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

representations were not true. Defendants made and intended the misrepresentations to induce the reliance of Plaintiffs and Members of the Class.

97.    As the manufacturer of its Products, Defendants are in the unique position of being able to provide accurate information about those Products.  Therefore there is a special and privity-like relationship between Defendants and Plaintiffs and other consumers.

98.    Defendants have a duty to correct the misinformation it disseminated through its advertising of the Products.  By not informing Plaintiffs and Members of the Class, Defendants breached its duty.  Defendants also gained financially from and as a result of this breach.

99.    By and through such deceit, misrepresentations and/or omissions, Defendants intended to induce Plaintiffs and Members of the Class to alter their position to their detriment. Plaintiffs and Members of the Class relied upon these false representations when purchasing Products in over-sized containers, which reliance was justified and reasonably foreseeable.

100.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and Members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for Products, and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at time of trial.

101.  Defendants acted with intent to defraud, or with reckless or negligent disregard of the rights of Plaintiffs and Members of the Class.

102.  Plaintiffs and Members of the Class are entitled to relief in an amount to be proven at trial, and injunctive relief.

//

//

//

//

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

(A)   For an Order certifying the Class pursuant to Federal Rule of Civil Procedure 23, appointing Plaintiffs as class representatives, and designating Plaintiffs' counsel as counsel for the Class;

(B)   For an Order certifying the California Subclass, appointing Plaintiff Gates representative of the California Subclass, and designating his counsel as counsel for the California Subclass;

(C)   For an Order certifying the New York Subclass, appointing Plaintiff Martinez representative of the New York Subclass, and designating his counsel as counsel for the New York Subclass;

(D)   For an Order declaring that Defendants' conduct violated the CLRA, Cal. Civ. Code § 1750, *et seq.*, and awarding (i) injunctive relief, (ii) costs of suit, and (iii) reasonable attorneys' fees;

(E)   For an Order declaring that Defendants' conduct violated California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, and California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, and awarding (i) injunctive relief, (ii) actual damages, (iii) prejudgment and post judgment interest; (iv) exemplary and/or punitive damages pursuant to Cal. Civ. Code § 3294, (v) costs of suit, and (iv) reasonable attorneys' fees pursuant to, *inter alia*, Cal. Code of Civ. Proc § 1021.5;

(F)   For an Order declaring that Defendants' conduct violated New York Gen Bus Law § 349, and awarding (i) injunctive relief, (ii) actual damages and/or statutory damages (i.e., $50 per GBL 349), whichever is greater or both plus treble actual damages not to exceed $1,000, (iii) prejudgment and post judgment interest, and (iv) reasonable attorneys' fees;

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

(G)     For an Order finding that Defendants made Negligent Misrepresentations, and awarding special, general, and compensatory damages to Plaintiffs and the Class;

(H)     For compensatory damages in amounts to be determined by the Court and/or jury;

(I)     For prejudgment interest on all amounts awarded;

(J)     For an order of restitution and all other forms of equitable monetary relief, as pleaded;

(K)     For injunctive relief as pleaded or as the Court may deem proper;

(L)     For an Order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit as pleaded; and

(M)     For such other and further relief as the Court deems just and proper.

//

//

//

//

//

//

//

//

//

//

//

//

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

## DEMAND FOR TRIAL BY JURY

Plaintiffs, individually and on behalf of all others similarly situated, hereby demand a jury trial on all claims so triable.

Dated: August 18, 2015                                        Respectfully submitted,

                                                    KAZEROUNI LAW GROUP, APC

                                        By:   /s/ Andrei Armas
                                            Abbas Kazerounian
                                            Andrei Armas
                                            ATTORNEY FOR PLAINTIFFS

**GOTTLIEB & ASSOCIATES**
Jeffrey M. Gottlieb, Esq. (JG-7905)
Dana L. Gottlieb, Esq. (DG-6151)
Pro hac vice to be filed
150 East 18th Street, Suite PHR
New York, NY 10003
NYJG@aol.com
danalgottlieb@aol.com
Telephone: (212) 228-9795
Facsimile: (212) 982-6284